**In re ATRON INC. OF MICHIGAN, Debtor.**

**Bankruptcy No. SG 92–84511.**

United States Bankruptcy Court, W.D. Michigan.

Sept. 21, 1994.

Thomas C. Clinton, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Atron Inc. of Michigan.

Bernard Schaefer, Schaefer & Associates, P.C., Grand Rapids, MI, for Mr. Zhang Fang.

## MEMORANDUM OPINION DENYING CLAIMANT'S MOTION BASED ON 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5) TO TRANSFER DETERMINATION OF CLAIM TO THE DISTRICT COURT

JO ANN C. STEVENSON, Bankruptcy Judge.

### ISSUE

This opinion decides the narrow and very limited question of whether a disputed, unliquidated claim for damages related to the termination of employment is a "personal injury tort" for purposes of 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5), thus requiring this Court to transfer the resolution of that claim to the district court.

### PROCEDURAL BACKGROUND

This matter comes before the Court upon the Debtor's objection to the allowance of an administrative claim filed by Zhang Fang.

---

The basis of Mr. Fang's unliquidated claim is that he was allegedly wrongfully discharged from his employment by Debtor–in–Possession Atron, Inc. of Michigan on account of his race. Before reaching the merits of his claim, Mr. Fang requested that this Court find his "cause of action to be a non-core proceeding as defined in 28 U.S.C. § 157(b)(2)(B) and refer it to the Federal District Court for the Western District of Michigan for trial pursuant to 28 U.S.C. § 157(b)(5)" (Claimant's "Reply to Objection to Administrative Claim of Zhang Fang and Request for Determination of Jurisdiction"). The Debtor-in-Possession objected to Claimant's allegation that the bankruptcy court lacks jurisdiction to liquidate Mr. Fang's claim. The Court heard oral argument on September 19, 1994.

## JURISDICTION

■ Determining the scope of the "personal injury tort" language at issue is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B) and (O). *See* 28 U.S.C. § 157(b)(3) and *In re Wolverine Radio*, 930 F.2d 1132, 1144 (6th Cir.1991). Accordingly, the Court is authorized to enter a final order subject to those appeal rights provided by 28 U.S.C. § 158(a). For the reasons which follow we determine that Mr. Fang's claim does not fall within the "personal injury tort" language of Section 157(b)(5) and thus the liquidation of his claim will go forward in the bankruptcy court as a Section 157(b)(2)(B) core proceeding.

## FACTUAL BACKGROUND

Debtor filed a voluntary Chapter 11 petition on August 12, 1992 and his plan of reorganization was confirmed on July 22, 1993. Claimant filed his administrative claim and demand for jury trial on January 25, 1993 alleging that he was fired by the Debt-

---

1. Claimant is an Asian American of Chinese national origin.

2. The damages represent $50,000 for humiliation and emotional distress; $11,088.46 in lost wages, a figure which has continued to increase $119.23 each day since the claim was filed; and $50,000 for punitive damages.

---

or-in-Possession on account of his race in violation of those civil rights guaranteed by the Elliott–Larsen Civil Rights Act, M.C.L.A. § 37.2101; M.S.A. § 3.548(101) et seq. and 42 U.S.C. § 1981.[1] Claimant's administrative claim seeks $111,088.46 in actual damages,[2] plus an additional $596.15 for each week that he is unable to find comparable employment.

Claimant began working as an independent contractor on Debtor's research and development team on March 25, 1990 and became a full-time employee on June 11, 1991. Although Claimant was the Debtor-in-Possession's only electronic process engineer, he was laid off on September 16, 1992. The Claimant believes that the Debtor-in-Possession used its financial troubles as a ruse for firing him on account of his race. The Claimant has offered no factual basis for his allegation, other than despite being told he was being laid off due to financial trouble, Mr. Fang saw his position advertised in the Grand Rapids Press some four days after being terminated.

The Debtor-in-Possession maintains that Claimant was not terminated on account of his national origin, but was laid off as part of a general downsizing of its work force. Since Claimant was the lowest senior employee in the engineering department, he was let go.[3] After investigating Mr. Fang's claim of discrimination, the Michigan Department of Civil Rights found no evidence of unlawful discrimination. It subsequently issued a July 14, 1993 "Order of Dismissal of the Complaint on the basis of insufficient grounds on which to issue a charge."[4]

## ANALYSIS

■ Claimant asserts that this Court is required to transfer this matter to the United States District Court for the Western District of Michigan because the termination of his employment resulted in a personal

---

3. Indeed, according to the July 14, 1993 Summary of Findings of the Michigan Department of Civil Rights, Claimant was one of thirteen employees laid off, twelve of whom were Caucasian.

4. Neither party has raised, argued, or briefed the applicability, if any, of *res judicata* or collateral estoppel. Accordingly, we do not address these issues.

injury tort for purposes of 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5). The former section designates the "estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11" as a noncore proceeding. The classification of Claimant's claim as a core or noncore proceeding is based on the threshold determination of whether the injury alleged by Claimant is the type contemplated by Congress when it drafted Section 157(b)(5). Adopted as part of the 1984 amendments to the Bankruptcy Code, Section 157(b)(5) provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

This section was added to the Code as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, which "[e]stablished a new system of jurisdiction, necessitated by the Supreme Court's ruling in *Northern Pipeline Constru. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ..." 130 Cong.Rec. H 6087–6088 (June 20, 1984) (floor statements). The Supreme Court held in *Marathon* that a broad grant of jurisdiction to the bankruptcy court was unconstitutional because it vested Article III power in judges who did not have the protections and safeguards specified in that Article. *Id.* at 62, 102 S.Ct. at 2867. Congress passed § 157(b)(5) to avoid the possibility that all matters previously delegated to bankruptcy courts would again be borne by the already overburdened Article III courts. *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824 (5th Cir.1993). By giving the district courts jurisdiction over certain types of cases, specifically personal injury and wrongful death actions, Congress responded directly to the constitutional infirmities identified in *Marathon* while preserving the Article I administrative court system that it had creat-

ed to deal with bankruptcy-related matters. *Id.* at 831.

The crux of determining whether this Court is required to transfer resolution of Mr. Fang's claim to the district court is whether we should assign a broad or narrow meaning to the phrase "personal injury tort." The plain language of the statute provides little guidance on how to resolve this question and the legislative history is similarly obscure. Few opinions have been written on this issue, but the Court finds those giving a narrower interpretation to the personal injury tort exception contained in 28 U.S.C. § 157(b)(5) the more persuasive.

The case most factually analogous to the case at bar is *In re Interco*, 135 B.R. 359 (Bankr.E.D.Mo.1991). In that case, Judge Barta held that the plaintiff's age discrimination claims were not personal injury claims pursuant to 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5) requiring that they be heard by a district court. In *Interco*, the plaintiff sought recovery of lost wages and employment related benefits, including retirement benefits and damages for emotional distress for the debtor's alleged violation of the Age Discrimination in Employment Act (ADEA),[5] the Missouri Human Rights Act, and the Employment Retirement Income Security Act (ERISA).[6] Plaintiff alleged that his age discrimination claims were unliquidated personal injury tort claims. However, the bankruptcy court adopted a narrower view of the personal injury exception, concluding that Congress intended to limit the exception to a narrow range of claims. In reaching its conclusion *Interco* looked to those courts that had focused on the "traditional, plain meaning sense" of the words "personal injury." *Perino v. Cohen (In re Cohen )*, 107 B.R. 453 (Bankr.S.D.N.Y.1989). *See also In re Vinci*, 108 B.R. 439 (Bankr.S.D.N.Y.1989); *Bertholet v. Harman*, 126 B.R. 413 (Bankr.D.N.H. 1991). The *Interco* court determined that an emotional distress claim was too removed from traditional personal injury torts to warrant transferring it to the district court. *Bertholet* was cited for the proposition that, "the better rule is that if a mental distress

---

**5.** 29 U.S.C. § 621, *et seq.*

**6.** 29 U.S.C. § 1001, *et seq.*

claim does not involve physical injury, then only if the injury is the gravamen of the complaint would § 157(b)(2)(5) be invoked." *Interco* at 362 (citing *Bertholet v. Harman* at 416). Otherwise, "jurisdiction would too easily be lost from this court" and the court "cannot believe Congress intended that". *Id.*

*In re Cohen, supra,* also draws the distinction between "traditional" personal injuries and emotional distress. In *Cohen,* the claimant filed a claim against the debtor, who owned and operated a restaurant, alleging that he had been discriminated against because he was blind. The debtor had apparently refused to allow the claimant into his restaurant with his guard dog in violation of a New York statute. The claimant sued the debtor for actual and punitive damages. The *Cohen* court concluded that the claim did not fall within the 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5) exceptions to bankruptcy court jurisdiction. Rather, Chief Judge Briante held that claimant's claim was "not a claim for a personal injury tort in the traditional, plain-meaning sense of the words, such as a slip and fall, or a psychiatric impairment beyond mere shame and humiliation." *Cohen,* 107 B.R. at 455.

We find this distinction to be determinative. If the Court were to adopt the expansive interpretation given to §§ 157(b)(2)(B) and 157(b)(5) urged by Mr. Fang, bankruptcy courts would be customarily stripped of jurisdiction in the otherwise traditional claims allowance and liquidation process. We do not doubt that most creditors and claimants in bankruptcy cases suffer distress of some sort. While not minimizing the emotional pain characteristic of job loss, the Claimant in the present case simply does not allege that his emotional suffering reached the level of a personal injury tort.

Michigan courts have consistently recognized that damages for mental and emotional distress are recoverable under the Elliott–Larsen Civil Rights Act. *Slayton v. Michigan Host, Inc.,* 122 Mich.App. 411, 332 N.W.2d 498 (1983). However, just because emotional distress is recoverable under that statute does not mean it qualifies as a personal injury tort as anticipated by Congress when drafting § 157(b)(5). In fact, the Court does not believe that these damages even rise to the level of a "traditional" personal injury tort under Michigan law. In order to limit the number of cases that would unquestionably be brought to recover for simple emotional and mental distress, Michigan tort law requires that the conduct be intentional and severe. As such, Michigan courts have adopted the standards enunciated in 1 Restatement Torts, 2d, pp. 71–72, which provides:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm …

*See Campos v. General Motors Corp.,* 71 Mich.App. 23, 246 N.W.2d 352 (1976); *Warren v. June's Mobile Home Village & Sales, Inc.,* 66 Mich.App. 386, 239 N.W.2d 380 (1976); *Frishett v. State Farm Mutual Automobile Ins. Co.,* 3 Mich.App. 688, 143 N.W.2d 612 (1966).

The Sixth Circuit has held that § 1981 violations are personal injuries in the same sense as are violations of § 1983. See *Demery v. City of Youngstown,* 818 F.2d 1257 (6th Cir.1987); *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). As under Elliott–Larsen, however, the question remains whether these personal injuries are the kind Congress intended to except from bankruptcy court jurisdiction when it drafted 28 U.S.C. § 157(b)(2)(B) and (b)(5).

Neither Claimant's pleadings nor counsel's arguments contain any allegation or suggestion that his "humiliation and emotional distress" are so severe that they rise to the level of a personal injury tort. While we recognize the danger of speculating as to the merits of this claim at this stage of the proceedings, we note the necessity of making this threshold determination. Otherwise, by merely alleging a questionable, ambiguous emotional injury in the context of a nontraditional personal injury tort claim, creditors would automatically divest the bankruptcy court of its traditional and significant role in determining the allowance, disallowance, and liquidation of claims. We do not believe this

is the result Congress intended in drafting Sections 157(b)(2)(B) and 157(b)(5).

We recognize that caselaw exists which supports the contrary view. *In re Boyer,* 93 B.R. 313 (Bankr.N.D.N.Y.1988) and *In re Smith,* 95 B.R. 286 (Bankr.N.D.N.Y.1988). In both *Smith* and *Boyer* the court declined to find jurisdiction over the debtor-plaintiff's actions for alleged civil rights violations noting that the claims were not related to the Chapter 7 case as they arose from events which occurred post filing. The court then proceeded to afford an expansive interpretation to the personal injury tort exception to bankruptcy court jurisdiction contained in 28 U.S.C. § 157(b)(2)(B) and (b)(5). In their respective views, the statute was broad enough to include civil rights claim.

Unfortunately, these two opinions, like those affording a more narrow interpretation to the statute, are somewhat conclusory and give little, if any, analysis of how they reached their respective interpretations. The unilluminating caselaw, as well as the scarce legislative history, has left this Court with little guidance as to how to proceed in this matter. We believe, however, that drawing the distinction as did *Interco, Cohen, Vinci,* and *Bertholet* between the "traditional, plain meaning sense" of the words "personal injury" and the emotional distress and humiliation of nontraditional personal injury tort claims yields the logical, preferable result. We are unwilling to adopt the broad exception to bankruptcy court jurisdiction urged by Claimant and thus open the door to a mass exodus of the claims allowance process to the district court, an outcome which § 157(b)(5) was enacted to preclude. *Baumgart, supra* at 831.

## CONCLUSION

Because the Claimant has not alleged a personal injury tort as anticipated by Congress in drafting 28 U.S.C §§ 157(b)(2)(B) and 157(b)(5), this Court has jurisdiction to determine Mr. Fang's wrongful discharge claim pursuant to 28 U.S.C. § 157(b)(2)(B). We therefore deny Claimant's motion to transfer the liquidation of his claim to the district court.

In deciding this narrow issue, we caution that we have neither addressed nor decided the validity of claimant's jury trial request (*See, Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990); *Rafoth v. National Union Fire Insurance Co. (In re Baker & Getty Financial Services, Inc.),* 954 F.2d 1169 (6th Cir.1992); and *In re Frost, Inc.,* 145 B.R. 878 (Bankr.W.D.Mich. 1992), nor whether Claimant's administrative claim meets the two prong test set forth in *Employee Transfer Corporation v. Grigsby (In re White Motor Corporation),* 831 F.2d 106 (6th Cir.1987) and *United Trucking Service, Inc. v. Trailer Rental Company, Inc. (In re United Trucking Service, Inc.),* 851 F.2d 159 (6th Cir.1988). As these issues were neither briefed nor argued, we leave their resolution to another day.

By virtue of the foregoing,

IT IS HEREBY ORDERED that Claimant's Motion to Transfer the liquidation of his claim to the District Court for the Western District of Michigan be and hereby is denied.

IT IS FURTHER ORDERED that the liquidation of the claim of Zhang Fang is hereby scheduled for a status conference to be conducted at 1:30 p.m. on October 17, 1994 in Grand Rapids, Michigan.